UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BILL BUSTER,

    Plaintiff,

v.        CASE NO.:

THE CATHEDRAL CHURCH
OF ST. PETER, INC., and
STEPHEN BURNUM MORRIS, individually,

    Defendants.
_____/

## WAGE THEFT COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BILL BUSTER ("Plaintiff"), hereby sues the Defendants, THE CATHEDRAL CHURCH OF ST. PETER, INC. ("CATHEDRAL") and STEPHEN BURNUM MORRIS ("MORRIS") (collectively "Defendants") and alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper in this Court because all facts material to all claims set forth herein occurred in Pinellas County, Florida.

3. At all times material, Plaintiff is and was a citizen of Florida.

4. At all times material, Defendant CATHEDRAL was/is a Florida Not For Profit Corporation with its principal place of business at 140 4th Street North,

St. Petersburg, FL 33701 with a registered agent identified as **Stephen Burnum Morris, 140 4th Street North, St. Petersburg, FL 33701**.

5. At all times material, Defendant MORRIS is and was a resident of Pinellas County.

## GENERAL ALLEGATIONS

6. Defendant CATHEDRAL operates an Episcopal cathedral at the corner of Fourth Street and Second Avenue N. in St. Petersburg.

7. Defendant MORRIS is the Dean of CATHEDRAL. In that position, MORRIS exercises significant control over the Defendant's operations, has the power to hire and fire employees, the power to determine salaries, the responsibility to maintain employment records and has operational control over significant aspects of the company's day-to-day functions.

8. Defendants are employers as defined by the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b), *et seq.* ("FLSA").

9. At all material times, Defendants were an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s) and during all relevant times had at least two employees and had an annual dollar volume of sales or business done of at least $500,000.

10. Plaintiff was employed by Defendants from 2004 through June 8, 2021 as sexton, a lay employee primarily responsible for cleaning and maintenance of the facility.

11. Plaintiff was engaged in interstate commerce as a substantial part of

2

his work during his employment with Defendants.

12. As a sexton, Plaintiff regularly and recurrently utilized the internet, telephone, interstate wires and similar agencies for communication across state lines to submit and receive billing, purchasing and other data and information to and from outside the state of Florida. By way of example, Plaintiff regularly and recurrently placed orders via the internet for materials from various out-of-state vendors, including Amazon and regularly and recurrently handled credit card transactions via the interstate wires.

13. As a sexton, Plaintiff regularly and recurrently travelled on the interstate highways to purchase and obtain goods and materials that moved across state lines, including goods and materials from Sam's Club, Home Depot and other vendors.

14. During the three years prior to Plaintiff's termination, Defendants engaged in several unlawful practices constituting wage theft, including the following:

    a. Defendants switched Plaintiff's position from hourly to salaried, improperly misclassified him as "exempt" from the FLSA overtime requirements, and failed to pay him overtime compensation for hours Plaintiff routinely worked in excess of forty (40) hours a workweek.

    b. Defendant CATHEDRAL breached its employment contract with Plaintiff, breached its duties under Defendant's 403(b) written program, and violated the federal Employee Retirement Income Security Act ("ERISA") by

unilaterally terminating and/or altering its employer contributions to Plaintiff's 403(b) plan in a discriminatory manner and without providing notice to Plaintiff.

c.   Defendant CATHEDRAL breached its employment contract with Plaintiff and violated ERISA by unilaterally excluding spousal health insurance coverage to Plaintiff in a discriminatory manner and without providing notice to Plaintiff.

d.   Defendants unlawfully discriminated against Plaintiff after he objected to the aforestated unlawful wage theft practices by, *inter alia*, Defendant MORRIS disciplined Plaintiff, angrily spewed the word "f—k" and other hateful vulgarity towards Plaintiff multiple times thereby creating a hostile work environment, threatened termination of Plaintiff's employment, and ultimately terminated his employment.

e.   Defendants unlawfully retaliated against Plaintiff by terminating his employment because he filed a valid workers' compensation claim.

15. At all times material, Defendants acted with malice and with reckless disregard for Plaintiff's rights.

16. Plaintiff has been required to retain the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

## COUNT I
## OVERTIME – FLSA (BOTH DEFENDANTS)

17. Plaintiff hereby incorporates by reference the allegations contained in

4

Paragraphs 1 to 16 as if fully restated herein.

18. This action is brought under the FLSA to recover unpaid overtime compensation owed to Plaintiff.

19. Plaintiff was an employee of Defendants under the FLSA.

20. Plaintiff routinely worked in excess of forty (40) hours a workweek but was not paid overtime compensation at a rate of time and one-half as required by the FLSA.

21. Defendants failed to comply with the FLSA because Plaintiff was regularly required to work in excess of forty (40) hours a workweek but was not paid overtime compensation as required by the FLSA.

22. Defendant MORRIS is subject to individual liability under the FLSA because he acted directly or indirectly in the interest of the employer in relation to Plaintiff, exercised significant control over the company's operations, has the power to hire and fire employees, the power to determine salaries, the responsibility to maintain employment records and has operational control over significant aspects of the company's day-to-day functions.

23. Defendants' violations of the FLSA were knowing, willful and in reckless disregard of the rights of Plaintiff. Defendants did not have reasonable grounds for believing that their acts were not a violation of the FLSA.

24. Defendants' failure to pay Plaintiff overtime compensation for hours worked over forty (40) in any workweek constitutes a violation of the FLSA.

25. Plaintiff has suffered harm, including unpaid overtime compensation,

as a direct result of Defendants' failure to pay Plaintiff overtime compensation as required by the FLSA.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue an Order awarding damages in the amount of the unpaid overtime compensation owed, awarding liquidated damages pursuant to 29 U.S.C. § 216(b), awarding reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), awarding injunctive relief requiring Defendants to comply with the FLSA, and awarding all such other relief as the Court deems just and appropriate.

## COUNT II
## UNPAID WAGES (DEFENDANT CATHEDRAL)

26. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 to 16 as if fully restated herein.

27. This is a common law claim for unpaid wages based upon Defendant CATHEDRAL's breach of its duty under the employment agreement with Plaintiff to pay him wages in the form of employer contributions to Plaintiff's 403(b) plan, full payment of Plaintiff's spousal health insurance coverage premiums and payment for his mobile phone and monthly mobile phone contract fees.

28. Defendant CATHEDRAL entered into a verbal employment agreement with Plaintiff pursuant to which Defendant CATHEDRAL promised Plaintiff that Defendant would pay bi-weekly employer contributions to Plaintiff's 403(b) plan at five percent automatically and match Plaintiff's contributions up to four percent for a total thirteen percent of Plaintiff's wages and that Defendant

6

would pay in full Plaintiff's spousal health insurance coverage premiums as part of his remuneration.

29. Defendant CATHEDRAL had a contractual duty to pay employer contributions bi-weekly to Plaintiff's 403(b) plan at five percent automatically and match Plaintiff's contributions up to four percent for a total thirteen percent of Plaintiff's wages and to pay in full Plaintiff's spousal health insurance coverage premiums.

30. Defendant CATHEDRAL did not pay, and Plaintiff is owed, employer contributions to Plaintiff's 403(b) plan and full payment of Plaintiff's spousal health insurance coverage premiums that were promised to him, but not paid, by Defendant CATHEDRAL. Accordingly, Defendant CATHEDRAL breached its duty to Plaintiff.

31. Defendant CATHEDRAL also promised to provide Plaintiff a mobile phone and pay his monthly mobile phone contract fees because, *inter alia*, Defendants expected Plaintiff to be on call 24 hours a day, 7 days a week and also had to be available to arm the alarm every night at 10:00 pm to midnight and then every morning at 5:50 a.m. seven days a week.

32. Defendant CATHEDRAL failed to provide Plaintiff a mobile phone or pay his monthly mobile phone contract fees, thereby breaching its duties under the employment contract with Plaintiff.

33. Plaintiff's unpaid employer contributions to Plaintiff's 403(b) plan, Plaintiff's unpaid spousal health insurance coverage premiums, and unpaid mobile

phone expenses constitute unpaid wages which are owed and payable by Defendant CATHEDRAL pursuant to Florida Statute Chapter 448.

34. Defendant CATHEDRAL, despite Plaintiff's reasonable attempts to obtain payment of these earned monies, has failed and refused to make payment to Plaintiff as required by Florida common law and Chapter 448.

35. As a result of Defendant's failure to pay earned wages, Plaintiff has suffered damages, including unpaid wages, interest and attorneys' fees.

WHEREFORE, Plaintiff prays for the following relief: Awarding damages in the amount of the unpaid wages owed, plus attorneys' fees and costs pursuant to Fla. Stat. § 448.08, and awarding all such other relief as the Court deems just and appropriate.

### COUNT III
### WRONGFUL TERMINATION BY DEFENDANT
### IN VIOLATION OF FLA. STAT. § 440.205
### (DEFENDANT CATHEDRAL)

36. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 to 16 as if fully restated herein.

37. Florida Statute § 440.205 states as follows:

> No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

38. On or about March 27, 2021, Plaintiff suffered a workplace injury when he injured his back while performing work for Defendants.

39. Plaintiff engaged in statutorily protected activity by filing a valid claim

8

or attempting to file a claim for workers' compensation benefits.

40. Defendant discharged Plaintiff because of his statutorily protected activity.

41. As a result of Defendant's unlawful actions, Plaintiff has suffered economic and emotional damages.

WHEREFORE, Plaintiff prays for the following relief:  (i) Economic damages, including lost wages, benefits, and other remuneration; (ii) Reinstatement of full fringe benefits; (iii) Front and back pay; (iv) Any other compensatory damages allowable under the law; (iv) Prejudgment and post-judgment interest; and (v) Any other relief the Court deems appropriate.

## COUNT IV
## VIOLATION OF ERISA, 29 U.S.C. § 1140
## (BOTH DEFENDANTS)

42. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 to 16 as if fully restated herein.

43. Pursuant to 29 U.S.C. § 1140, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act."

44. Plaintiff was a participant or beneficiary of employee benefit plans sponsored by the Defendant, to wit Defendant's 403(b) plan and Defendant's

9

health insurance plan, which were established pursuant to and regulated by the provisions of ERISA.

45. Plaintiff exercised his rights to which he was entitled under the provisions of Defendant's 403(b) plan and Defendant's health insurance plan by objecting to Defendants' refusal to pay bi-weekly employer contributions to Plaintiff's 403(b) plan and its refusal to pay in full Plaintiff's spousal health insurance coverage premiums, both of which were required under the applicable benefit plans and the employment contract between Plaintiff and Defendant CATHEDRAL.

46. Defendants discharged, disciplined and discriminated against Plaintiff for exercising his rights to which he was entitled under these benefit plans.

47. Defendant MORRIS disciplined Plaintiff, angrily spewed the word "f—k" and other hateful vulgarity towards Plaintiff multiple times thereby creating a hostile work environment, threatened termination of Plaintiff's employment, and ultimately terminated his employment.

48. Defendants took these actions against Plaintiff for the purpose of interfering with his attainment of his rights to which he was entitled under Defendant's 403(b) plan and Defendant's health insurance plan.

49. At all times material hereto, Defendants had a specific intent to interfere with Plaintiff's attainment or rights to bi-weekly employer contributions to Plaintiff's 403(b) plan and payment in full Plaintiff's spousal health insurance coverage premiums.

50. In an effort to prevent Plaintiff from learning of their unlawful interference, Defendants stopped providing Plaintiff with paystubs detailing the deductions from his remuneration and refused to provide such documentation even when Plaintiff requested it.

51. By the conduct described herein, Defendants violated 29 U.S.C. § 1140.

52. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered a loss of wages and other benefits, increased health care costs, an impairment of his employment records, emotional distress, humiliation and loss of professional standing, and has also incurred litigation costs as a result thereof.

53. As a result of Defendants' unlawful conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, consequential damages and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for the following relief: (i) Economic damages to compensate him for past and future financial losses, emotional pain, suffering, inconvenience, and mental anguish; (ii) Compensatory damages to recover benefits due to him under Defendant's plans in an amount equal to (1) that amount which Defendant is obligated to pay plus (2) interest thereon; (iii) An injunction enjoining Defendants from continuing to engage in the unlawful conduct described herein; (iv) An award of Plaintiff's costs and expenses of this action, along with reasonable attorneys' fees pursuant to  ERISA, 29 U.S.C. § 1132(g); and (v) Any

other relief the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

**DATED** this 4th day of August, 2021.

                          Respectfully submitted,

                          /s/ Jay P. Lechner
                          Jay P. Lechner, Esq.
                          Florida Bar No.: 0504351
                          **LECHNER LAW**
                          Jay P. Lechner, P.A.
                          Fifth Third Center
                          201 E. Kennedy Blvd., Suite 412
                          Tampa, Florida 33602
                          Telephone: (813) 842-7071
                          Facsimile: (813) 225-1392
                          jplechn@jaylechner.com
                          admin@jaylechner.com
                          *Attorneys for Plaintiff*